## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHELLE GALVANI,** | : | **CIVIL ACTION NO. 1:08-CV-0393** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, DISTRICT** | : | |
| **COURT ADMINISTRATION FOR** | : | |
| **YORK COUNTY, STEVEN M. CARR,** | : | |
| **GEORGE SWARTZ, CHARLES** | : | |
| **WILLIAMS, and NANCY WILLIAMS,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

*Pro se* plaintiff Michelle Galvani ("Galvani") brings this civil rights action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against the following defendants: (1) the Commonwealth of Pennsylvania, (2) the District Court Administration for York County, (3) Steven M. Carr, Esquire, both in his individual and official capacity, (4) George Swartz, Esquire, both in his individual and official capacity, and (5) Charles and Nancy Williams, plaintiff's parents.  With the exception of Charles and Nancy Williams, Galvani seeks to hold each of the defendants liable for violating her Fourteenth Amendment rights to substantive and procedural due process and equal protection, for engaging in behavior that constituted a violation of her Fourth Amendment rights to be free from unreasonable searches and seizures, and for violations of her rights under the Pennsylvania Constitution to due process, equal protection, and the right to be free from unreasonable searches and seizures.

Additionally, Galvani alleges that each of the defendants committed the state law torts of false imprisonment, intentional infliction of emotional distress, and invasion of privacy.  Presently before the court are four motions to dismiss (Docs. 7, 9, 13, 21), each filed on behalf of a separate defendant.  For the reasons that follow, all four motions to dismiss will be granted and Galvani's claims will be dismissed.

I.   **Statement of Facts**[1]

Michelle Galvani is the natural mother of two minor children, identified as A.W. and E.J.  The dispute in this case centers around a determination granting partial custody of these children to Galvani's parents, defendants Charles and Nancy Williams ("the Williamses").  In October 2007, the Williamses initiated a custody hearing in the York County Court of Common Pleas, the purpose of which was to seek modification of a child custody order issued January 22, 1999.[2]  (See Doc. 9, Exs. 1, 2.)  Before the custody hearing, and pursuant to a court directive, defendant Steven M. Carr ("Carr") was appointed conciliator for a pretrial child

---

[1] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint and in the public records provided by defendants.  See infra Part II.  The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

[2] The January 22, 1999 custody order stated that A.W. and E.J.'s "parents would share legal custody, that Mother [Galvani] would have primary physical custody, that Fathers would have rights of partial custody and Grandparents [the Williamses] would have rights of partial custody as set forth therein."  (Doc. 9, Ex. 2.)

custody conciliation conference,[3] which took place on January 8, 2008.  (Id.)
Defendant George Swartz ("Swartz") acted as Galvani's counsel during this
conciliation conference.  (Doc. 6 ¶ 5; Doc. 9, Ex. 1; Doc. 13.)

When Galvani and the Williamses were unable to resolve their differences at
the conciliation conference, an interim custody order was entered pending the
outcome of trial.[4]  (See Doc. 9, Ex. 2.)  The order granted temporary joint legal
custody to all parties, allowing both Galvani and the Williamses to "share in making
decisions of importance" for the children.  (Id. at 5.)  Physical custody was
determined "on a week on/week off basis," meaning that the children alternated
week-long stays between Galvani and the Williamses.  (Id.)  Pursuant to the order, a
custody trial was scheduled for March 24, 2008, but the parties were directed to
begin immediate mediation with a court-designated mediator.  (Id. at 2.)  Galvani

---

[3] The conciliation conference is a pretrial attempt to mediate custody
disputes.  (See Doc. 9, Ex. 2.)

[4] The interim custody order was signed by the Honorable Maria Musti Cook,
a judge in the Family Division of the York County Court of Common Pleas.  (Doc. 9,
Ex. 2.)  However, the order was "entered as a result of a pre-trial conciliation
conference held on January 8, 2008, before Steven M. Carr, Conciliator."  (Id.)
Thus, it appears from the public record that Judge Cook issued the interim order
based upon Carr's recommendation.

claims that after this conciliation conference, her children were "seized" from her.[5]
(See Doc. 6 ¶ 31.)

Although the record is unclear, it appears that Galvani and the Williamses
attended a pretrial conference on March 6, 2008 before the Honorable Maria Musti
Cook in the Family Division of the York County Court of Common Pleas.  (See Doc.
6 ¶ 10; Doc. 9, Ex. 2.)  According to Galvani, this hearing resulted in the grant of "an
'Order of Detention' authorizing a third party to care for the minor" children.[6]
(Doc. 6 ¶ 17.)  The custody dispute was then scheduled for trial in May 2008.  (See
Doc. 9, Ex. 1.)

Galvani filed the instant action on April 2, 2008.  (See Doc. 6.)  She alleges
that defendants the Commonwealth of Pennsylvania ("the Commonwealth"), the
District Court Administration for York County ("York DCA"), Carr, and Swartz

---

[5] Galvani alleges very few facts in her complaint, making it difficult for the
court to reconstruct a timeline of the key events underlying her claims.  For
example, Galvani's complete description of the January 8, 2008 conciliation hearing
is as follows: "Defendant Steven M. Carr acted under color of state law when he
seized the minor plaintiffs on January 8, 2008."  (Doc. 6 ¶ 31.)  This "seizure"
comprises the entire basis of plaintiff's Fourth Amendment claim.  Viewed in its
most favorable light, Galvani's description is woefully incomplete.  As a result, the
court has supplemented Galvani's recitation of the facts with information contained
in the pertinent public records describing the court proceedings at issue in this
case.  Such records are well within the breadth of information upon which a court
may rely in its consideration of a motion to dismiss.  See infra Part II.

[6] Galvani never explains the precise nature of the alleged "Order of
Detention," or against whom it was issued.  Additionally, the court has examined
the records of the court proceedings submitted by the parties and is unable to
discern any additional information regarding this order.  However, the docket in
the case suggests that the pretrial conference did not alter the interim custody
order of January 8, 2008, and merely continued the case for trial.  (See Doc. 9, Ex. 1.)

4

infringed her rights by: (1) violating her Fourteenth Amendment rights to

substantive and procedural due process, and equal protection; (2) violating her

Fourth Amendment right to be free from unreasonable searches and seizures; (3)

and violating her state constitutional rights to due process, equal protection, and

the right to be free from unreasonable searches and seizures.  (Id.)  Additionally,

Galvani asserts the state law tort claims of false imprisonment, intentional infliction

of emotional distress, and invasion of privacy against each of the named defendants.

(Id. at 7.)  To rectify her alleged injuries, Galvani requests injunctive relief from the

January 8, 2008 custody order, the invalidation of certain Commonwealth statutes,

which authorized the interim custody order to be issued, and $3,000,000 in

damages.

On April 3, 2008, the Commonwealth moved to dismiss the complaint on

Eleventh Amendment sovereign immunity grounds.  (Doc. 7.)  York DCA filed a

motion to dismiss on April 15, 2008, also asserting Eleventh Amendment immunity.

(Doc. 9.)  In the same motion, Carr claimed protection from suit under principles of

absolute judicial immunity.  (Id.)  On April 29, 2008, Swartz filed a motion to dismiss

for failure to state a claim under Rule 12(b)(6), and urged the court to abstain from

entertaining the matter, or to dismiss it on Rooker-Feldman grounds.  (Doc. 13.)

Finally, the Williamses filed a motion to dismiss on May 1, 2008, arguing that this

court lacked jurisdiction to adjudicate the state law tort claims Galvani asserted

against them.  (Doc. 21.)  Each of these motions to dismiss has been briefed and is

ripe for disposition.

## II.   <u>Standard of Review</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to "give the defendant notice of what the . . . claim is and the grounds upon which it rests." <u>Sershen v. Cholish</u>, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting <u>Erickson v. Pardus</u>, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  <u>See</u> FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>Bell Atl. Corp. v. Twombly</u>, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); <u>Victaulic Co.</u>

6

v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a

complaint for failure to state a claim if it contains "enough factual matter (taken as

true) to suggest the required element.  This does not impose a probability

requirement at the pleading stage, but instead simply calls for enough facts to raise

a reasonable expectation that discovery will reveal evidence of the necessary

element."  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting

Twombly, --- U.S. at ---, 127 S. Ct. at 1965).  Under this liberal pleading standard,

courts should generally grant plaintiffs leave to amend their claims before

dismissing a complaint that is merely deficient.  See Grayson v. Mayview State

Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.

2000).

## III.   Discussion

Plaintiff brings her constitutional claims pursuant to §§ 1983, 1985(3),[7] and

1986 of Title 42 of the United States Code.  These sections create no substantive

rights, but instead provide a remedy for infringement of rights created by other

federal laws.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002) (discussing

---

[7] Galvani's complaint does not specify which subsection of 42 U.S.C. § 1985
defendants allegedly violated, but the court assumes she brings her claims under
§ 1985(3).  Subsection 1985(1) applies to conspiracies that interfere with the duties
of an officer of the United States, while § 1985(2) prohibits conspiracies intending to
obstruct justice and intimidate litigants or witnesses.  None of the parties in this
matter are federal officers and plaintiff does not allege that defendants obstructed
justice or intimidated her or anyone else in their capacity as witness or litigant.
Therefore, the court will treat the complaint as asserting a claim under § 1985(3),
which provides a remedy for conspiracies to violate civil rights.

§ 1983); <u>Great Am. Fed. Sav. & Loan Ass'n v. Novotny</u>, 442 U.S. 366, 372 (1979)

(discussing § 1985); <u>Rogin v. Bensalem Twp.</u>, 616 F.2d 680, 696 (3d Cir. 1980)

(discussing § 1986); <u>see also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 222 n.28

(1970) (Brennan, J., concurring in part and dissenting in part) (discussing

derivative nature of § 1986); <u>Robison v. Canterbury Vill., Inc.</u>, 848 F.2d 424, 431 n.10

(3d Cir. 1988) (same).

Section 1983 offers private citizens a means to redress violations of federal

law committed by state officials.  <u>See</u> 42 U.S.C. § 1983.  The statute provides, in

pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

<u>Id.</u>  To establish a claim under this section, the plaintiff must show a deprivation of

a "right secured by the Constitution and the laws of the United States . . . by a

person acting under color of state law."  <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d

Cir. 1996) (quoting <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Section 1985(3) and § 1986 are closely related.  Section 1985(3) prohibits

conspiracies to deprive "any person or class of persons of the equal protection of

the laws, or equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).

To establish a *prima facie* case under § 1985(3), a plaintiff must prove that: (1)

defendants engaged in a conspiracy, (2) the conspiracy's purpose was to deprive,

either directly or indirectly, any person or class of persons of equal protection of the laws or equal privileges and immunities under the laws, (3) defendants committed an act in furtherance of the conspiracy, and (4) defendants' actions resulted in injury to the plaintiff's person or property or a deprivation of the plaintiff's rights or privileges as a United States citizen.  Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006); see also Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971); Brown v. Philip Morris, Inc., 250 F.3d 789, 805 (3d Cir. 2001).

"Mere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim." D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992) (quoting Robinson v. McCorkle, 462 F.2d 111, 113 (3d Cir. 1972)).  Rather, the plaintiff must allege the existence of an agreement among defendants, as well as the duration of the conspiracy, its object, and the actions taken in furtherance of it.  See Ramsey v. Dintino, Civ. A. No. 05-5492, 2007 WL 979845, at *9 (D.N.J. Mar. 30, 2007) (dismissing § 1985(3) claim for failure to allege existence of an agreement among defendants); Grisby v. Kane, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) (holding that plaintiff must allege the period, object, and acts taken in furtherance of a conspiracy to prevail on a motion to dismiss); Loftus v. Se. Pa. Transp. Auth., 843 F. Supp. 981, 986 n.8 (E.D. Pa. 1994) (citing Black & Yates, Inc. v. Mahogany Ass'n, Inc., 129 F.2d 227, 231 (3d Cir. 1941) ("A general allegation of conspiracy without a statement of the facts is an allegation of legal conclusion and insufficient of itself to constitute a cause of action.")); Kalmanovitz

v. G. Heileman Brewing Co., 595 F. Supp. 1385, 1401 (D. Del. 1984) (requiring

particularized allegations of conspiracy), aff'd, 769 F.2d 152 (3d Cir. 1985).

    Lastly, § 1986 provides that:

> Every person who, having knowledge that any of the wrongs conspired to
> be done, and mentioned in [§ 1985] of this title, are about to be committed,
> and having power to prevent or aid in preventing the commission of the
> same, neglects or refuses so to do, if such wrongful act be committed, shall
> be liable to the party injured, or his legal representatives, for all damages
> caused by such wrongful act, which such person by reasonable diligence
> could have prevented. . . .

42 U.S.C. § 1986.  Thus, a prerequisite to a cognizable § 1986 claim is the existence

of a conspiracy prohibited by § 1985.  See Robison, 848 F.2d at 431 n.10; Pearson v.

Miller, 988 F. Supp. 848, 859 (M.D. Pa. 1997) ("No claim can be maintained under

section 1986 unless a cause of action has been established under section 1985.").

Once a § 1985(3) conspiracy is established, § 1986 liability will attach only if a

plaintiff demonstrates that the defendant knew about the conspiracy and had the

power to prevent it.  See Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994);

Conroy v. City of Phila., 421 F. Supp. 2d 879, 888 (E.D. Pa. 2006).

    In the action *sub judice*, Galvani alleges that each of the named defendants,

with the exception of the Williamses, violated her Fourteenth Amendment rights to

due process and equal protection, her Fourth Amendment right to be free from

unreasonable searches and seizures, and her state constitutional rights to due

process, equal protection, and her right to be free from unreasonable searches and

seizures.  Additionally, Galvani claims that each of the defendants, including the

Williamses, committed the state law torts of false imprisonment, intentional

infliction of emotional distress, and invasion of privacy.  For clarity of discussion, the court will address the claims against each of the defendants separately.

### A.    The Commonwealth & York DCA Defendants

The Eleventh Amendment precludes private federal litigation against a state and its agencies.[8] Hans v. Louisiana, 134 U.S. 1, 15-16 (1890); see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Lombardo v. Pennsylvania, 540 F.3d 190, 194-95 (3d Cir. 2008).  This is a jurisdictional bar subject to only two exceptions: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment, or (2) a state may waive its sovereign immunity by consenting to suit.  Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002).  With respect to the first exception, it is well settled that Congress had no intention to abrogate the states' sovereign immunity by enacting § 1983, Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989), nor has Congress expressly abrogated Pennsylvania's immunity from suit under § 1985(3), see, e.g., Zelinski v. Pa. State Police, 282 F. Supp. 2d 251, 264 (M.D. Pa. 2003), rev'd in part on other grounds, 108 F. App'x 700 (3d Cir. 2004); Breslin v. Brainard, No.

---

[8] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

01-CA-7269, 2002 WL 31520480, at *3 (E.D. Pa. Oct. 30, 2002); <u>Seeney v. Kavitski</u>, 866 F. Supp. 206, 209 (E.D. Pa. 1994), <u>aff'd sub nom</u>. <u>Seeney v. Cmty. Action Agency of Del. County, Inc.</u>, 107 F.3d 8 (3d Cir. 1997).

Furthermore, Pennsylvania has unequivocally withheld its consent to such suits.  Section 8521 of Title 42 of the Pennsylvania Code clearly states, "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment of the Constitution of the United States."  42 PA. CONS. STAT. § 8521(b). This statutory language is unambiguous; Pennsylvania elected to retain its sovereign immunity.  <u>See</u> <u>Lombardo</u>, 540 F.3d at 196 n.3; <u>Laskaris v. Thornburgh</u>, 661 F.2d 23, 25 (3d Cir. 1981).  Consequently, Galvani's claims against the Commonwealth are jurisdictionally barred and must be dismissed.  Leave to amend this claim will be denied as futile.  <u>See</u> <u>Grayson</u>, 293 F.3d at 108 (observing that the district court may exercise its discretion to dismiss a claim with prejudice when leave to amend would be futile).

Galvani also asserts civil rights violations against the York DCA, which is an office within the York County Court of Common Pleas.  (<u>See</u> Doc. 9 ¶ 9; Doc. 10 at 1). More specifically, Galvani seeks to hold the York DCA liable for what she considers the adverse interim custody order that resulted from the conciliation on January 8, 2008.  She argues that "the court proceedings [were] motivated by bad faith, and deliberate and selective application and/or omission of State law."  (Doc. 6 ¶ 3.)

Under the Pennsylvania Constitution, all Pennsylvania courts are part of a unified judicial system governed pursuant to the general supervisory and administrative authority vested in the Pennsylvania Supreme Court. See PA. CONST. art. V, §§ 1, 2, 10; see also Callahan v. City of Phila., 207 F.3d 668, 672 (3d Cir. 2000); Ludwig v. Berks County, Civ. A. No. 07-2127, 2007 WL 2463306, at *2 (E.D. Pa. Aug. 28, 2007). As part of the unified judicial system, each of the Pennsylvania lower courts and its agencies are arms of the "'Commonwealth government' and thus are state rather than local agencies." Callahan, 207 F.3d at 672. Because it is an integral administrative office within the York County Court of Common Pleas, the York DCA is a state agency within the unified judicial system. Hence, it is immune from suit under the Eleventh Amendment principles described above. See Benn v. First Judicial Dist., 426 F.3d 233, 240-41 (3d Cir. 2005) (holding that when an arm of the unified judicial system is sued, the Commonwealth is the real party in interest). Galvani's claims against the York DCA will be dismissed and leave to amend will be denied. See Grayson, 293 F.3d at 108 (observing that the district court may exercise its discretion to dismiss a claim with prejudice when leave to amend would be futile).

**B.   Steven M. Carr**

Certain individuals fulfilling well-established roles within the judicial process are entitled to absolute immunity from § 1983 civil suits. See Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) ("A judicial officer in the performance of his duties has absolute immunity from suit . . . ."); Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001).

13

Judges, testifying witnesses, and prosecutors all enjoy absolute judicial immunity.[9]
See Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (discussing judges); Briscoe v.
LaHue, 460 U.S. 325, 339-41 (1983) (discussing testifying witnesses); Imbler v.
Pachtman, 424 U.S. 409, 430 (1976) (discussing prosecutor's immunity for activities
"intimately associated with the judicial process").  In the instant matter, Galvani
alleges that Carr, who is a court-appointed conciliator in child custody disputes,
violated her rights when he authorized the interim custody order granting partial
custody to the Williamses.[10]  (See Doc. 6.)  Galvani's suit charges violations by Carr
in both his individual and official capacity.  (See id. ¶ 2.)

The Third Circuit has recognized the inherent sensitivity of child custody
proceedings and, relatedly, the special need to protect judicial officers attempting to
facilitate these proceedings.  See Ernst v. Child & Youth Servs. of Chester County,
108 F.3d 486, 496-97 (3d Cir. 1997) (recognizing the heightened need for absolute
immunity for official responsibilities in child custody proceedings, where aggrieved
parents are "likely to be even more resentful of state interference").  Accordingly,
judicial immunity has been extended to cover individuals acting as guardian ad
litem, social workers involved in the initiation and prosecution of child custody

---

[9] The precise scope of immunity for judges, testifying witnesses, and
prosecutors is subject to role-specific exceptions that are not important here.

[10] In addition to her ambiguous claim that Carr "seized" her children,
Galvani complains that, after the January 8, 2008 conciliation, Carr made no
recommendations for investigation or evaluation, and did not recommend an
expedited custody hearing.  (See Doc. 12 ¶¶ 82-83.)

proceedings, and court-appointed doctors and psychiatrists.  See Hughes, 242 F.3d at 127-28 (discussing guardian ad litem and court-appointed doctor and psychiatrist immunity); Ernst, 108 F.3d at 495-97 (discussing social worker immunity).  In the context of child custody proceedings, each of these judicial actors is court-appointed, bearing the responsibility of gathering information from the parties involved and reporting that information to the court via professional recommendations.  See Hughes, 242 F.3d at 126-28; Ernst, 108 F.3d at 496-97; see also McArdle v. Tronetti, 961 F.2d 1083, 1085 (3d Cir. 1992) (discussing immunity for court-appointed psychiatrists when producing a diagnosis at the court's request); Gardner v. Parson, 874 F.2d 131, 146 (3d Cir. 1989) (explaining the rationale for guardian ad litem immunity).  Absolute immunity for these individuals is necessary so that they can properly perform their responsibilities without fear of litigious reprisal.

The court finds that Carr is entitled to absolute immunity with respect to his court-appointed duties.  A conciliator is a court-appointed mediator, attempting to fashion a custody order amenable to all parties prior to a full custody hearing.  In this fashion, the conciliator serves as an "arm of the court," akin to the guardian ad

litem or court-appointed social workers.[11]  The conciliator is an integral part of the judicial system, see McArdle, 961 F.2d at 1085 (noting that the determinative question is whether the officers were "functioning as integral parts of the judicial system"), and is tasked with gathering information from the parties in order to exercise an independent judgment, to fairly mediate the parties' claims, and to make recommendations to the presiding judge.  Exposing the conciliator to liability would greatly hinder the appropriate exercise of the conciliator's duties and, in all likelihood, render the court-appointed mediation toothless.[12]  Accordingly, the court finds Carr immune from Galvani's individual capacity claims.

With respect to Galvani's official capacity claims against Carr, those allegations are barred by the Eleventh Amendment.  As the Supreme Court has held, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  Will, 491 U.S. at 71 (internal citations omitted).

---

[11] The conciliator's role is especially similar to the role of court-appointed child psychologists, granted absolute immunity in Hughes v. Long, 242 F.3d 121, 126-28 (3d Cir. 2001).  Like the psychologist, the conciliator does not initiate the custody proceedings, and his or her role is limited to making recommendations to the court.  In the instant matter, although Carr mediated the conciliation, it was York County Court of Common Pleas judge Maria Musti Cook who issued the interim custody order pursuant to his recommendations.

[12] Although the Third Circuit has not directly opined on the issue of absolute immunity for child custody conciliators, the Ninth Circuit has recognized such immunity for family court counselors employed by the court.  See Meyers v. Contra Costa County Dep't of Soc. Servs., 812 F.2d 1154, 1159 (9th Cir. 1987).  Of course, Meyers is not binding upon this court, but its logic is persuasive.

For the reasons described above, civil suits against the Commonwealth are barred by principles of sovereign immunity.  The court finds that Galvani's claims against Carr both in his official and individual capacity must be dismissed.  Leave to amend will be denied as futile.  See Grayson, 293 F.3d at 108 (observing that the district court may exercise its discretion to dismiss a claim with prejudice when leave to amend would be futile).

### C.   George Swartz

Galvani claims that Swartz, in both his official and individual capacity, participated in the alleged federal and state constitutional violations by failing to cite relevant constitutional law, by failing to follow state regulations for child abuse and neglect, and by failing to protect Galvani's minor children.  (See Doc. 24 ¶¶ 9-13.)  At all times relevant to this cause of action, Swartz served as Galvani's personal attorney.  It is undisputed that Swartz is privately employed and was privately retained by Galvani to represent her in the child custody dispute.  (See Doc. 6 ¶ 5; Doc. 14 at 1.)

The threshold inquiry in a § 1983 cause of action is whether the individual in question acted under "color of state law."  See § 1983.  This "state action" requirement restricts liability to those instances in which the defendant may fairly be characterized as a state actor.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 928 (1982); see also Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). Although Galvani cursorily alleges that Swartz acted under color of state law, (see Doc. 6 ¶ 5), this allegation misapplies the correct meaning of that phrase.  As her

privately retained attorney, Swartz was clearly not acting on behalf of the state. Rather, his role in this case was that of an advocate for Galvani's position. Whether Swartz's representation met Gavlani's expectations is simply not a question that the federal courts are entitled to decide under § 1983. Given this fact, Galvani's § 1983 must be dismissed.

Allegations under § 1985(3) need not necessarily arise from state action. See United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 832-34 (1983); Griffin, 403 U.S. at 97-102. Purely private conspiracies to deprive an individual of the equal protection of the laws are cognizable in federal court so long as a plaintiff pleads the elements necessary to establish unlawful conspiratorial conduct. See Farber, 440 F.3d at 134 (describing the four necessary elements). In the instant matter, Galvani fails to satisfy this pleading requirement. Instead, her allegations catalogue Swartz's individual failings: failure to cite proper case law, failure to protect her minor children from "seizure," failure to follow state custody regulations, and failure to protect Galvani's personal liberties.[13]  (See Doc. 24 ¶¶ 9-

---

[13] Galvani does assert that "Swartz, in concert with other defendants [sic] denied Plaintiff's due process of the LAW." (Doc. 24 ¶ 11.) This blanket statement hardly provides the specificity required by the pleading standard set forth in Twombly, see Twombly, --- U.S. ---, 127 S. Ct. at 1964-65 (requiring that a complaint contain enough factual matter to place the defendant on notice of the claim asserted), and in Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (requiring that a complaint contain enough factual detail to provide adequate notice of the underlying claim).

13.)  To the extent Galvani complains about Swartz's individual actions, her claims

are not cognizable under § 1985(3) and must be dismissed.[14]

In addition to her federal claims, Galvani asks the court to assume

supplemental jurisdiction with respect to those allegations arising from alleged

violations of state constitutional law and state tort law.  The supplemental

jurisdiction statute provides that

> in any civil action of which the district courts have original jurisdiction, the
> district courts shall have supplemental jurisdiction over all other claims
> that are so related to claims in the action within such original jurisdiction
> that they form part of the same case or controversy under Article III of the
> United States Constitution.

28 U.S.C. § 1367(a).  Given that the court has dismissed Galvani's federal

constitutional claims, the federal character of her case against Swartz is

nonexistent.  Although the district court retains the discretion to resolve disputes

when only state law claims remain, see Carnegie-Mellon Univ. v. Cohill, 484 U.S.

343, 350 (1988); Annulli v. Panikkar, 200 F.3d 189, 202 (3d Cir. 1999), the court finds

---

[14] By virtue of her failure to state a cognizable § 1985(3) claim, Galvani's
claims arising under § 1986 must also fail.  See Robison, 848 F.2d at 431 n.10.

that Swartz's alleged violations of state law are more properly determined in a state tribunal.[15]  Thus, Galvani's state law claims will be dismissed without prejudice.

In sum, the court finds that Galvani has failed to state a claim for relief against Swartz.  Therefore, Galvani's claim will be dismissed and leave to amend will be denied as futile.  See Grayson, 293 F.3d at 108 (observing that the district court may exercise its discretion to dismiss a claim with prejudice when leave to amend would be futile).

### D.   The Williamses

Galvani claims that the Williamses "falsely abus[ed] the Family Court process," thereby causing Galvani "emotional injury" and "willfully interfering with the care of [A.W. and E.J.] without just cause."  (Doc. 6 ¶ 4.)  Although the precise contours of these claims are left unclear by Galvani's complaint, it appears that the intended allegations are in the nature of state law torts, including invasion of privacy, false imprisonment, and intentional infliction of emotional distress.  (See id. ¶¶ 59-66, 75-79.)  Galvani requests that the court assume supplemental

---

[15] Specifically, given that Galvani's remaining state law claims will require the interpretation of the Pennsylvania Constitution, as well as the application of state tort law, principles of judicial economy weigh heavily in favor of litigating the matter in state court.  Additionally, because this matter is in the early pleading stages and discovery has not yet progressed, it will not inconvenience the parties to pursue the state law claims in state court.  See Osborn v. Haley, 549 U.S. 225, 127 S. Ct. 881, 896 (2007) (holding that a district court should weigh considerations of judicial economy, convenience, and fairness to the litigants when all federal claims are dismissed and only state law claims remain).

jurisdiction over these state law claims, asserting that her alleged injuries are

closely linked to the January 8, 2008 custody hearing at the center of this case.

As stated above, the exercise of supplemental jurisdiction is discretionary.

See Carnegie-Mellon Univ., 484 U.S. at 350.  With respect to the Williamses, only

state law claims are raised and, by virtue of the court's reasoning with respect to

each of the other named defendants, all of Galvani's federal claims have been

dismissed.  Of course, a district court may retain jurisdiction over a cause of action

when only state law claims remain.  See id.; Annulli, 200 F.3d at 202.  However, "in

the usual case in which all federal-law claims are eliminated before trial, the

balance of factors to be considered under the pendent jurisdiction

doctrine—judicial economy, convenience, fairness, and comity—will point toward

declining to exercise jurisdiction over the remaining state-law claims." Carnegie-

Mellon Univ., 484 U.S. at 350 n.7.  The court finds that given the dismissal of each of

Galvani's federal claims, the balance of factors weighs in favor of dismissing the

state law claims against the Williamses.[16]  To the extent that Galvani wishes to

pursue her cause of action against the Williamses, a state forum is much more

---

[16] The court's reasoning on this point is in accord with that stated above.  See
supra note 15 and accompanying text.

appropriate.[17]  As a result, the court will dismiss without prejudice Galvani's claims

with respect to the Williamses.

## IV.   **Conclusion**

For the foregoing reasons, the court will grant defendants' motions to dismiss

(Docs. 7, 9, 13, 21).

An appropriate order will issue.

    S/ Christopher C. Conner    
CHRISTOPHER C. CONNER
United States District Judge

Dated: November 4, 2008

---

[17] Although the dismissal of Galvani's state law tort claims derives from the court's refusal to exercise supplemental jurisdiction, Younger abstention principles also favor disposition of this matter in state court.  See Younger v. Harris, 401 U.S. 37 (1971).  Younger abstention is appropriate when "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claim."  Matusow v. Trans-County Title Agency, LLC, --- F.3d --- , 2008 WL 4590683, at *6 (3d Cir. Oct. 16, 2008) (quoting Marran v. Marran, 376 F.3d 143, 154 (3d Cir. 2004)).  The allegations Galvani lodges against the Williamses ostensibly sound in tort.  However, her claims, which allege "injuries" arising from the interim custody order of January 8, 2008, are nothing more than a transparent attempt to circumvent the proceedings of the York County Court of Common Pleas Family Division.  According to her allegations in the record, the "injuries" Galvani claims to have suffered are no different than the "injuries" any parent would suffer by virtue of an adverse custody decision.  There are sound reasons guiding Pennsylvania's policy allowing interested parties to challenge parental custody and it is up to the Family Division to apply these policies in individual circumstances.  Displeasure with the Family Division, without more, simply does not supply the aggrieved with a one-way ticket to federal court.  To the extent that Galvani objects to the conclusions of the Family Division, the state appellate courts are capable of adjudicating those objections.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELLE GALVANI,** | : | **CIVIL ACTION NO. 1:08-CV-0393** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, DISTRICT** | : | |
| **COURT ADMINISTRATION FOR** | : | |
| **YORK COUNTY, STEVEN M. CARR,** | : | |
| **GEORGE SWARTZ, CHARLES** | : | |
| **WILLIAMS, and NANCY WILLIAMS,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 4th day of November, 2008, upon consideration of the

defendants' motions to dismiss (Docs. 7, 9, 13, 21) plaintiff's complaint (Doc. 6), and

for the reasons set forth in the accompanying memorandum, it is hereby

ORDERED that:

1.   The motion to dismiss (Doc. 7) is GRANTED.  All claims against the
     Commonwealth of Pennsylvania are DISMISSED.

2.   The motion to dismiss (Doc. 9) is GRANTED.  All claims against the
     District Court Administration for York County and Steven M. Carr,
     Esquire, are DISMISSED.

3.   The motion to dismiss (Doc. 13) is GRANTED.  All claims against
     George Swartz, Esquire, are DISMISSED.

4.   The motion to dismiss (Doc. 21) is GRANTED.  All claims against
     Charles and Nancy Williams are DISMISSED.

5.    The Clerk of the Court is directed to CLOSE this case.

                                         S/ Christopher C. Conner
                                           CHRISTOPHER C. CONNER
                                           United States District Judge